## DUNCAN LIFE & ACCIDENT ASS'N v. ROSS.

No. 25517.    Oct. 29, 1935.

Sandlin & Winans and H. W. Sitton, for plaintiff in error.

Paul D. Sullivan and Sullivan & Marmaduke, for defendant in error.

PER CURIAM. The parties will be referred to as plaintiff and defendant as in the court below. The plaintiff, as beneficiary in a policy of insurance issued by the defend-

ant upon the life or her daughter, Janie Stanley, who died on April 28, 1932, brought suit to recover thereon. The plaintiff made the allegations that the defendant executed and delivered a life insurance policy in the principal sum of $1,000 to Janie Stanley, and that thereafter all premiums charged by the defendant and by virtue of the policy were paid up unto the time of the death of the insured, and that all other requirements of said policy were complied with by the insured, and that proper proof of death of the insured was filed with the defendant, and that the defendant had failed to pay the beneficiary the proceeds of said policy, and ask for judgment for the amount thereof.

The defendant in its answer, after making a general denial, set up an affirmative defense, which, in part, is as follows:

"This defendant alleges that said Janie Stanley, at the time of the making of application for insurance with defendant, was not an insurable risk and that the statements made by said insured in her application for insurance were not true and that the condition of the health of said applicant at the time of the making of said application was not such as to entitle said applicant to said policy of insurance, which facts were well known to said applicant at the time of the making of said application and the issuance of said policy pursuant to said application; that for some time prior to the making of said application said insured was in bad health and was suffering from an incurable malady and disease, which fact said insured concealed from this defendant and failed to disclose the same to this defendant although she had full and complete knowledge of the same; that by reason of said willful concealment of said facts. this defendant relying upon the truth and accuracy of the statements in said application and believing the same to be true, issued said policy to said applicant and said applicant thereby perpetrated a fraud upon this defendant. and on account of such fraud plaintiff, as the beneficiary in said policy of insurance, is not entitled to recover the amount sued for in plaintiff's petition."

The defendant then tendered the premiums paid upon the policy to plaintiff.

To this answer the plaintiff replied, which, in substance, was a general denial to all the facts set up in defendant's answer.

The cause was tried to a jury, which returned a verdict for the plaintiff beneficiary for the amount of the policy, upon which judgment was rendered in favor of plaintiff. The defendant insurance company appeals, assigning as errors the insufficiency of the evidence and that the judgment is contrary to law.

The defendant is a mutual benefit association, operating under the laws of the state of Oklahoma, and the contracts issued on in this case and the application therefor are governed by section 10631, Okla. Stats. 1931, which, in part, provides as follows:

"Applicants for membership in mutual benefit associations shall be required to pass a medical or physical examination such as may be required by the by-laws of the association, or benefit certificates may be issued upon the warranty by the applicant that the answers and statements to the questions as to the conditions of health of the applicant and all other representations made in the application for a benefit certificate are true and are to be used as the basis and consideration upon which said benefit certificate is issued; provided, that in addition to the answers and representations of the applicant for membership, as herein provided. the applicant shall give the name and address of his or her family physician and shall furnish to the association a certificate of such physician, or, if applicant has no family physician, a certificate of a licensed physician, that he knows the applicant and believes that the applicant is a good, insurable risk."

The facts in this case reveal that the plaintiff and her two boys had a policy with the defendant, and that on the 13th day of April, 1931, plaintiff made an application for a policy on her daughter, Janie Stanley, and on the 14th day of April, 1931, the defendant having procured a physician's certificate from the family doctor of the insured, issued policy forming the basis of this action.

In the application, among other questions propounded, there are two which the defendant set up as having been falsely answered. The first one, "Is your health good at this time? Yes."; and the second question, "Have you ever had tuberculosis? No." This application and these answers were made by the mother and signed as follows: "Applicant, Janie Stanley, by mother"; also in the physician's certificate, the defendant complained of the answer made by the doctor to the question, "Does applicant now have or ever had (b) tuberculosis? No." Defendant contends that these statements are false and if it were not for them they would not have issued the policy. Defendant thereby tendered the defense of fraud. In case of Mutual Life & Accident Association of Frederick v. Moore, 162 Okla. 260, 20 P. (2d) 168, it is said:

"The defense of the insurer was an affirm-

ative one. The gist of the defense is that the insured practiced fraud upon the insurer in obtaining the policy of insurance. In Sovereign Camp, W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017, 1022, this court held: 'Fraud is a fact to be proved as any other fact, by competent evidence. * * *' "

Defendant offered evidence showing that sputum examinations were made on April 18, 1931 and December 14, 1931, and that both examinations showed positive for tuberculosis. The defendant also offered a witness who was a practical nurse, and who stated that she had known Janie Stanley since 1920, and that Janie Stanley told her that she had sputum tests made in 1931. That the first test came back positive and the second test came back negative. That she didn't go to bed in February when she had the flu and in the summer of 1931, she went to dances and had apparently recovered from the attack of flu. One of the defendant's expert witnesses was asked the following question:

"From your examination and knowledge of tuberculosis, how long had this patient had tuberculosis? A. I cannot say definitely. The physical findings were that she had tuberculosis. That was corroborated by the X-ray findings, the history of the case brought out the fact that she had probably been sick of tuberculosis since February, 1931, that a history of positive sputum examination in March, 1931, showing the germs of tuberculosis were present."

That part of the answer concerning the history of the case was stricken by the court. Later this same witness testified as follows:

"Q. From your examination, you would think that she likely had that disease, tuberculosis, before March, 1931? A. No doubt. Probably she had it before she broke down with the flu in February, and it took the flu to break down her resistance."

The defendant offered in evidence on cross-examination the proof of death, which according to the attending physician in the last sickness of the insured, revealed that the immediate cause of death was tuberculosis.

The plaintiff testified that she did not know that her daughter had tuberculosis and never knew about these sputum examinations until several months after the first test was made; that one of the tests showed negative; that her daughter never had a doctor until she and her baby had the flu in February, 1931; that the doctor advised the taking of cough syrup for them and that it stopped their cough. Plaintiff offered a number of witnesses who testified concerning the health and the appearance of the insured. The substance of their testimony was that the insured was a delicate person and apparently in good health; that she attended dances and other festivities for young people.

Inasmuch as section 10631, O. S. 1931, makes the statements of the applicant warranties, the vital and controlling question in this case is: Was the insured in sound health at the time the policy was taken out and moreover did the insured have tuberculosis at that time?

The trial court in its instruction No. 8 squarely submitted this issue to the jury. The instruction is as follows:

"You are further instructed that if you find that on the 14th day of April, 1931, the date of the policy or when it was delivered to the plaintiff, said Janie Stanley was not in a state of sound health, you must find for the defendant, and the term sound health as used with reference to life insurance means that state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously and not a mere indisposition or temporary ailment which does not in itself tend to weaken or undermine the constitution of the insured. The word 'serious' is not generally used to signify a dangerous condition but rather a grave or weighty trouble or disposition and 'sound health' means that state of health which is free from any such disease or ailment as affects the general healthfulness of the system seriously, not a mere temporary indisposition."

We have examined this instruction, together with the other instructions in this case, and hold that they fairly present the defendant's theory as well as the applicable law in this case.

Whether a person is in sound health as the term is ordinarily used and as explained in the above instruction, cannot be determined by any strict or general rule. but must be determined by the particular facts and circumstances in each case. The evidence in this case on that point is conflicting, and as such was properly submitted to the jury.

The question of the sound health of the insured being at issue in this case, both plaintiff and defendant offered nonexpert witnesses who gave opinions concerning the physical condition of the insured and particularly with reference to whether or not the insured appeared to be a tubercular.

We hold that this testimony is admissible and that nonexpert opinions of acquaintances and associates of the insured who had adequate opportunity for observation of her physical condition are admissible. City of Pawhuska v. Martin, 151 Okla. 24, 1 P. (2d) 638; Ferguson v. Davis Co., 57 Iowa, 601, 10 N. W. 906; Billings v. Metropolitan Life Insurance Co., 70 Vt. 477, 41 Atl. 516.

The fact that the proof of death of the insured discloses that the insured died with tuberculosis is only prima facie evidence of that fact, and is not conclusive of any disease suffered by the insured at the time the policy was taken out. John Hancock Mutual Life Insurance Co. v. Dick, 117 Mich. 518, 76 N. W. 9, 44 L. R. A. 846; Mutual Ben. L. Ins. Company v. Higginbotham, 95 U. S. 380, 24 L. Ed. 499. It is also stated in Sovereign Camp W. O. W. v. Brown, 94 Okla. 277, 221 P. 1017:

"Proof that the insured was suffering from arterio sclerosis at the time of the death would not be proof that his statement made in his application that he was in sound bodily health was untrue at the time when it was made."

It is also stated in the same case, as follows:

"The fact that a man had the incipient elements of a disease (the seeds of death) in him, which may or may not shortly spring up into fatal disease, does not mean that he does not fulfill the meaning of the term 'in good health.' Sovereign Camp of Woodmen of the World v. Jackson, 57 Okla. 318, 157 P. 92; May on Insurance, 295; Scofield's Adm'x v. Metropolitan Life Ins. Co., 79 Vt. 161; Woodmen of the World v. Locklin, 28 Tex. Civ. App. 486."

This court, in the case of National Aid Life Ass'n v. Long, 175 Okla. ___, 51 P. (2d) 814, had before it a case very similar to the case at bar, wherein the defendant was a mutual benefit life assurance association. The application for insurance was made by the mother-in-law of the insured. A certificate from the family physician was also procured by the insurance company. A policy was issued in the sum of $1,000. The insured died and the beneficiary brought suit on the policy. The defense was that the beneficiary could not recover for the reason that there were false and untrue statements made in the application. The insured died with tuberculosis. Judgment was for the plaintiff and the defendant appealed, and this court, in affirming the case, stated as follows:

"The question at issue was whether the insured had tuberculosis, or any other disease set out in the application of the insured for insurance with the company of the defendant herein, at the time the policy was taken out. The evidence in the case is voluminous, but upon careful reading and consideration thereof, we find that there was competent evidence supporting both sides of the proposition, and the same being a question of fact, these questions were submitted to the jury and the jury found for the plaintiff. Under the decisions by our court, the verdict of the jury should not be disturbed."

The burden of showing that the insured was not in good health at the time the policy in question was delivered, was upon the defendant to prove to the satisfaction of the jury. Federal Life Insurance Co. v. Roberts, 90 Okla. 252, 216 P. 426. See, also, Sovereign Camp of Woodmen of the World v. Jackson, 57 Okla. 318, 157 P. 92, L. R. A. 1916F, 166; National Council Knights and Ladies of Security v. Owen, 61 Okla. 256, 161 P. 178; Barnes v. Fidelity Mutual Life Association, 191 P. 678, 43 A. 341, 45 L. R. A. 264; National Life & Accident Insurance Co. v. Wicker, 171 Okla. 241, 43 P. (2d) 50.

The defendants cited two cases to sustain their contention that the judgment should be reversed. The first is the case of Pioneer Circle Ins. Co. v. Turnham, 112 Okla. 266. 241 P. 176. This case is distinguishable from the case at bar for the reason that the material facts were entirely different. The evidence was to the effect that the insured died with tuberculosis less than 50 days after the policy was issued. The undisputed evidence was that the insured was in an advanced stage of tuberculosis at the time the application was made, the plaintiff's contention primarily being that the insured did not know that she had tuberculosis at that time, and that the evidence failed to show that the insured signed or knew of the application for insurance, and the court held, and properly so, that inasmuch as this was an insurance company operating on the fraternal plan, the statements made in the application were warranties and not representations, and a false statement made in the application material to the risk would constitute a breach of warranty and render the policy void.

The second case cited by the defendant is Oklahoma Protective Association v. Montgomery, 160 Okla. 135, 16 P. (2d) 135. This case is easily distinguishable from the case at bar for the reason that this court in no way passed upon the merits of the case, but reversed the decision of the trial court because of a refusal to permit attending phy-

sicians to testify concerning communications made by the applicant, notwithstanding the applicant had agreed in writing to permit any physician or other person who had attended him to disclose information to the insurance company acquired by them. This question does not present itself in the case at bar.

The issues of the parties to this lawsuit were fairly submitted to the jury under proper instructions. A verdict was rendered in favor of the plaintiff, and from an examination of the entire record we find no error. We, therefore, conclude that the judgment should be affirmed. It is so ordered.

The Supreme Court acknowledges the aid of Attorneys Gerald B. Klein, Philip N. Landa, and Edgar M. Lee in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Klein and approved by Mr. Landa and Mr. Lee, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.